UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERCIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:14-cv-71-SEB-WGH |
| ) | |
| ONE, GRAY, 2007 DODGE RAM TRUCK, ) | |
| *Vehicle Identification Number* ) | |
| *1D7HU18P77S164526* ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ROGER L. PEDIGO, ) | |
| ) | |
| Claimant. ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This civil forfeiture case has been brought by the United States, against One, Gray, 2007 Dodge Ram Truck, *VIN 1D7HU18P77S164526* ("Dodge Truck"). Roger Pedigo seeks to challenge this forfeiture as a claimant of the subject vehicle.

Tony Pedigo was arrested by the New Albany Police Department on April 9, 2013, in connection with drug trafficking and firearm violations. The Dodge Truck was seized in conjunction with Tony Pedigo's arrest. FBI agents executed a federal seizure warrant for the Dodge Truck then in possession of the New Albany Police Department. Tony Pedigo died while incarcerated in the Floyd County, Indiana, Jail. His father, Roger Pedigo, now seeks to take possession of and title to Tony Pedigo's Dodge Truck.

The United States has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the grounds that it is entitled to the forfeiture of the Defendant Dodge Truck as a matter of law, pursuant to 21 U.S.C. § 881(a)(4).

## I. Summary Judgment Standard

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." Warsco v. Preferred Technical Grp., 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). At the summary judgment stage, the court does not resolve issues of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).

## II. Statement of Undisputed Facts[1]

In January 2007 and again in February 2008, Tony Pedigo was convicted of felony drug trafficking offenses as well as other crimes. (SA Paul Meyer's Affidavit at ¶ 5, 6 at Dkt. No. 23-3; Pedigo Depo. 38:7-25; 39:1- 5; 59:21-25; 60:1-25 at Dkt. No. 23-1). He was released from prison in April 2010. (Declaration of TFO Robert Amick at ¶ 8 at Dkt. No. 23-4; Pedigo Depo. 38:7-25). However, by 2011, according to law enforcement reports, Tony Pedigo had again begun dealing methamphetamine. (Amick Decl., ¶ 8).

In October 2011, an investigation ensued in Scott County, Indiana. (Meyer Aff., ¶ 8; Declaration of SA Todd Brown at ¶ 5 at Dkt. No. 24). On October 31, 2011, a controlled buy of 1/4 ounce of methamphetamine occurred from Tony Pedigo as well as a firearm, more specifically, a Weilhrauch-Hermann, Model HW38, .357/.38 Special revolver, Serial Number 1076274, all for $800. (Meyer Aff., 9-13). On November 15, 2011, a second controlled buy of approximately 1/4 ounce of methamphetamine occurred from Tony Pedigo for $650. (Meyer Aff., ¶ 14-15). During these controlled buys, Tony Pedigo drove the Dodge Truck, frequenting the residence of a known distributor of methamphetamine on numerous occasions. (Brown Decl., ¶ 24).

On February 23, 2013, another controlled buy was arranged from Tony Pedigo (Brown Decl., ¶ 6) during which Special Agent ("SA") Todd Brown and Task Force Officer ("TFO") Brian Reardon participated. (Brown Decl., ¶ 6). TFO Reardon met with and searched a confidential source ("CS"). SA Brown searched the CS's vehicle to ensure that the CS did not have any additional money or narcotics in his possession or in his vehicle and none was found. (*Id.*) SA Brown provided the CS with pre-recorded official government purchase funds for use in

---

[1] The facts recited here come largely from the Government's Undisputed Statement of Facts contained in its Reply Brief. (Dkt. No. 43 at 3-9).  Claimant has not submitted his own statement of facts.

3

effecting the controlled buy. (*Id.*) The CS was also outfitted with recording devices. (Brown Decl., ¶ 7). Officer Ronnie Gaines, New Albany Police Department, was also present. (Brown Decl., ¶ 9).

TFO Reardon and SA Brown monitored text messages between the CS and Tony Pedigo informing Pedigo he wanted to buy crystal methamphetamine from him. (Brown Decl., ¶ 8). The buy was set to occur at the Scottsburg, Indiana, Walmart but was later changed to occur at the Sale Barn, an outdoor flea market. (*Id.*) SA Brown and TFO Reardon maintained constant surveillance of the CS while en route to and during the controlled buy. (*Id.*) Officer Gaines also provided surveillance by following the CS to the buy location. (*Id.*)

Upon arriving at the Sale Barn parking lot, SA Brown observed the Dodge Truck. (Brown Decl., ¶ 13). SA Brown also saw the CS park his vehicle near the rear of the parking lot, in proximity to the Dodge Truck, and enter the rear driver's side door of Pedigo's truck. (Brown Decl., ¶ 14). Both TFO Reardon and SA Brown were able to clearly observe the Dodge Truck. (*Id.*) SA Brown witnessed the CS exit Tony Pedigo's Dodge Truck, after which both the CS and Tony Pedigo separately departed the buy location. (Brown Decl., ¶ 15). Officer Gaines had maintained constant surveillance of the CS on his return to the prearranged meeting location in Clark County, Indiana. TFO Reardon and SA Brown followed shortly thereafter. (Brown Decl., ¶ 16).

Upon arriving at the prearranged meeting location, TFO Reardon recovered the recorders as well as a clear plastic bag that contained a crystal-like substance, which field-tested positive for methamphetamine. (Brown Decl., ¶ 17). Methamphetamine is a Schedule II controlled substance. (*Id.*) TFO Reardon also retrieved the remaining government purchase funds from the CS. (*Id.*) TFO Reardon searched the CS's person and SA Brown searched the CS's vehicle to

ensure that the CS did not have any additional money or narcotics on his person or in the vehicle. (Brown Decl., ¶ 18). No contraband was found on the CS's person or in the vehicle. (*Id.*)

Immediately following the controlled buy, TFO Reardon and SA Brown debriefed the CS, who reported that in addition to Pedigo there was another man who was a passenger in the Dodge Truck, to wit, Joey Groenenboom, also known as "Boom." (Brown Decl., ¶ 19). Groenenboom was later identified as Harlan J. Groenenboom, known to law enforcement as a dealer of methamphetamine and an associate of Tony Pedigo. (*Id.*) The CS stated that he entered the back seat of Tony Pedigo's truck and purchased one ounce of methamphetamine directly from Tony Pedigo in exchange for $1,800. (*Id.*) The CS also reported that, during the buy, Tony Pedigo stated that because he was purchasing from 1/4 to one pound of methamphetamine, he wanted the CS to provide cash to enable him to buy the methamphetamine at a lower price. (*Id.*)

At the conclusion of their controlled purchase, SA Brown and TFO Reardon photographed and weighed the methamphetamine that had been purchased from Tony Pedigo by the CS, (Brown Decl., ¶ 21; Exh. 2 to Brown's Decl. (Picture of Methamphetamine)), which measured 29 grams (including the plastic bag in which it was contained). (Brown Decl., ¶ 22. Upon testing, the DEA Laboratory in Chicago, Illinois, confirmed that the substance was methamphetamine. (Brown Decl., ¶ 23; Exh. 3 to Brown's Decl. (DEA Laboratory Test Results)). On April 9, 2013, pursuant to a federally issued arrest warrant for drug trafficking and firearm violations, law enforcement agents arrested Tony Pedigo in Jeffersonville, Indiana. (Brown Decl., ¶ 25). At the time of his arrest, Tony Pedigo was searched and found to possess one ounce of crystal methamphetamine and 1/2 ounce of heroin. (*Id.*) A search of his residence disclosed firearms, digital scales, glass pipes, cutting agents and drug paraphernalia all associated with the possession and distribution of narcotics. (Brown Decl., ¶ 26).

On April 9, 2013, the New Albany Police Department seized Tony Pedigo's Dodge Truck. (Brown Decl., ¶ 27). On October 2, 2013, FBI agents obtained pursuant to a federal seizure warrant the Dodge Truck from the New Albany Police Department. (*Id.; see also In the Matter of the Seizure of One Gray 1500 Dodge Ram Truck, VIN 1D7HU18P77S14526*, Case Number 4:13-mj-43-MGN).

On April 9, 2013, a Criminal Complaint with a supportive Affidavit was filed in this court, in Cause Number 4:13-cr-0016-SEB-MGN ("Criminal Case"), charging Defendant Tony Pedigo with the offense of Felon in Possession of a Firearm, Distribution of Methamphetamine, a Schedule II Narcotic Controlled Substance, and Possession of a Firearm during a Drug Trafficking Crime. (Criminal Case Dkt. 1; Brown Decl., ¶ 33).

On April 24, 2013, an Indictment was returned charging Tony Pedigo with Distribution of Methamphetamine, Possession of a Firearm by a Felon, and Possession of a Firearm During a Drug Trafficking Crime. (Criminal Case Dkt. 18; Brown Decl., ¶ 33). On June 4, 2013, a Superseding Indictment was filed and on August 30, 2013, the United States filed a Motion to Dismiss Upon Suggestion of Death in light of the notice from the Floyd County Sheriff's Department that Tony Pedigo had died while in the custody of the Floyd County, Indiana, Jail. (Criminal Case Dkt. 47; Brown Decl., ¶ 33). That motion was granted by the Court on September 4, 2013 and the prosecution was closed.

Prior to Tony Pedigo's arrest on the drug charges, he had been arrested and detained in the Scott County Jail for failure to pay child support. (Pedigo Depo. 24:21-25; 25:1-8; 49:11-21). Roger Pedigo, Claimant herein, allegedly agreed to pay his son's unpaid child support debt in order to secure the release of Tony Pedigo. (Pedigo Depo. 25:9-18; *see also* Claimant's Answers to Interrogatories at 4 at Filing No. 23-9). Tony Pedigo promised to repay Roger Pedigo either by

selling certain of his vehicles or in some other fashion. (Pedigo Depo. 59:5-13; 67:10-13). No payment plan was ever officially established nor was any money paid by Tony to his father, Roger Pedigo, to cover this obligation. (Pedigo Depo. 68:8-16).

Roger Pedigo thereafter also paid $650 in storage fees to the Scottsburg Police Department to secure the release of a Harley Davidson Motorcycle seized by the Police Department in connection with Tony Pedigo's arrest on April 9, 2013. (Pedigo Depo. 17:1-18; 25:22-25; 26:1-16; 29:15-19). The motorcycle was owned by Roger, not Tony Pedigo. (Pedigo Depo. 26:19-23; 29:7-14; 71:13-15).

Following Tony Pedigo's death, Roger Pedigo paid to Collins Funeral Home, Inc. the amount of $7,000 towards the funeral expenses for Tony Pedigo. (Pedigo Depo. 77:12-19; 78:4-25; 79:1-13; *see also* Claimant's Answers to Interrogatories at 6; Updated Claimant's Answers to Interrogatories at 2 at Dkt. No. 23-10; Deposition of Jacqueline Pedigo, 43:15-25; 44:1-13 at Dkt. No. 23-10; *see also* Updated Claimant's Answers to Interrogatories at 2). Roger Pedigo was not appointed personal representative of Tony Pedigo. (Pedigo Depo. 82:24-25; 83:1-16; 88:13-25; 89:1).

Claimant alleges that Tony Pedigo did not purchase the Dodge Truck with illegally obtained proceeds from his drug trafficking activities. (Dkt. No. 35). He also avers that Tony Pedigo was tortured while in FBI custody. (Dkt. No. 36). These contentions have not been supported by any admissible evidence.

### III. Discussion

#### A. Claimant's Standing

The United States maintains that Claimant lacks the necessary standing to assert this claim because he is neither an unsecured creditor nor the personal representative of his decedent

7

son's estate. The United States further asserts that Claimant has failed to comply with the procedural requirements for this action pursuant to Supplemental Rule G(5)(a), which also defeats his standing to bring this case.

Claimant's alleged right to the Dodge Truck based on Tony Pedigo's alleged debt to him lacks any evidentiary corroboration. He has proffered an Order issued by the Scott Circuit Court apparently authorizing the Transfer for Assets Without Administration with regards to Tony Pedigo's interest in the Dodge Truck. (Dkt. No. 40-1).

We need not conclusively resolve the issue of Roger Pedigo's standing, although his standing seems unlikely to exist here. Because other legal principles foreclose the requested relief on clear and uncontroverted grounds, we will move directly to that part of our discussion.

### B. There Are No Genuine Issues of Material Fact Underlying this Forfeiture

Claimant attempts to dispute that the Dodge Truck was purchased with proceeds of illegal drug trafficking activity, relying entirely on inadmissible hearsay to make that point. Even if we were to assume that the Dodge Truck was purchased as Roger Pedigo contends, it remains undisputed that on February 23, 2013, the Dodge Truck was utilized to transport illegal drugs, as previously described. (Dkt. No. 43 at EFC pp. 4–6.

Tony Pedigo used the Defendant Truck to facilitate his distribution of methamphetamine, which finding alone suffices under 21 USC § 881(a) to render the vehicle subject to forfeiture pursuant to the substantial connection test in 18 U.S.C. § 893(c)(3). *See United States v. A 2000 Jeep Grand Cherokee*, 2008 WL 4691029 at *3 (N.D. Iowa 2008) (granting summary judgment under substantial connection test where government proved that defendant was used on one occasion to deliver one ounce of cocaine); *United States v. One 2001 Mercedes Benz ML 320*, 668 F. Supp. 2d 1132, 1135 (E.D. Wis. 2009) (granting summary judgment under substantial

connection test where government proved that defendant vehicle was used on one occasion to transport distribution quantity of marijuana).

The use of the vehicle to transport illegal controlled substances is the single dispositive fact necessary for the United States to prevail on its summary judgment motion. No other issues of fact or law require analysis or discussion. Thus, pursuant to Fed. R. Civ. Pro. 56, the United States has established its entitlement to an Order of Forfeiture for the Dodge Truck, pursuant to 21 U.S.C. § 881(a)(4).

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the United States's Motion for Summary Judgment. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: __12/08/2015__

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record and**

**Roger L. Pedigo**
**80 Beechwood Avenue**
**Scottsburg, IN 47170**